## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHEMOCENTRYX, INC.,     )
     )
     Plaintiff,     )     C. A. No.: _____
     )
     v.     )
     )
ANNORA PHARMA PRIVATE LIMITED,     )
HETERO USA INC., and HETERO LABS     )
LIMITED,     )
     )
     Defendants.     )

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ChemoCentryx, Inc. ("ChemoCentryx"), by its undersigned attorneys, brings this action against Defendants Annora Pharma Private Limited ("Annora Pharma"), Hetero USA Inc. ("Hetero USA"), and Hetero Labs Limited ("Hetero Labs") (collectively, "Annora" or "Defendants"), and hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  This action relates to Annora's filing of an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration ("FDA") seeking approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of a generic version of ChemoCentryx's pharmaceutical product TAVNEOS® (avacopan) prior to the expiration of United States Patent Nos. 11,951,214 ("'214 Patent") and 11,603,356 ("'356 Patent") (together, the "Patents-in-Suit"), including any applicable exclusivities or extensions.

## THE PARTIES

2.     Plaintiff ChemoCentryx is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320.

3.     ChemoCentryx is the holder of New Drug Application ("NDA") No. 214487 for TAVNEOS® and the owner of the Patents-in-Suit.

4.     Upon information and belief, Defendant Annora Pharma is a corporation organized and existing under the laws of India, having a principal place of business at Sy. No. 261, Annaram Village, Gummadidala Mandal, Sangareddy District, Telangana State, 502313, India.  Upon information and belief, Annora Pharma, by itself and/or through its affiliates and/or agents, submitted and is the holder of ANDA No. 220814 ("Annora's ANDA") for avacopan capsules, oral, 10 mg ("Annora's ANDA Product").  By a letter dated December 24, 2025 ("Annora's Notice Letter"), Annora notified ChemoCentryx that Annora had submitted to FDA Annora's ANDA for Annora's ANDA Product.  Annora's Notice Letter was signed by Somaraju Indukuri, Ph.D., who is identified as the U.S. Agent for Annora Pharma and authorized to accept service of process in the United States for Annora Pharma.  Upon information and belief, Somaraju Indukuri acts at the direction of, under the control of, and/or for the benefit of Annora Pharma and is controlled by Annora Pharma.

5.     Upon information and belief, Defendant Hetero USA is a corporation organized and existing under the laws of Delaware, having its headquarters and principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854.  Upon information and belief, Hetero USA is the United States regulatory agent for Annora Pharma, including with respect to Annora's ANDA.  The letter envelope for Annora's Notice Letter identified the sender as "Hetero USA"

2

and the address of the sender as "1035 Centennial Avenue, Piscataway, New Jersey 08854." Upon information and belief, Somaraju Indukuri is Vice President, Regulatory Affairs, U.S. Agent, at Hetero USA.

6.      Upon information and belief, Defendant Hetero Labs is a corporation organized and existing under the laws of India, having a principal place of business at 7-2-A2 Hetero Corporate Industrial Estates, Sanath Nagar, Hyderabad, Telangana, 500018, India. Upon information and belief, Annora Pharma is a wholly owned subsidiary of Hetero Labs. Upon information and belief, Hetero USA is a subsidiary of Hetero Labs.

7.      Upon information and belief, Defendants, by themselves and/or through their affiliates and/or agents, are in the business of, *inter alia*, developing, manufacturing, obtaining regulatory approval of, marketing, selling, and distributing generic copies of branded pharmaceutical products throughout the United States, including in New Jersey.

8.      Upon information and belief, Defendants collaborated in the research and/or development of Annora's ANDA Product and in the preparation and/or submission of Annora's ANDA and continue to actively collaborate in seeking approval from FDA for Annora's ANDA to commercially manufacture, use, offer for sale, sale, and/or import Annora's ANDA Product in the United States, including in New Jersey.

9.      Upon information and belief, Defendants rely on material assistance from one another to commercially manufacture, use, offer for sale, sell, and/or import generic copies of branded pharmaceutical products in the United States market, including in New Jersey. Upon information and belief, Defendants intend to provide such material assistance to one another and act collaboratively to commercially manufacture, use, offer for sale, and/or sell within the United States, and/or import into the United States, Annora's ANDA Product upon FDA approval of

3

Annora's ANDA.  Upon information and belief, each of the Defendants will, upon FDA approval of Annora's ANDA, financially benefit from the commercial manufacture, use, offer for sale, sale, and/or importation of Annora's ANDA Product in the United States, including in New Jersey.

<u>**JURISDICTION AND VENUE**</u>

10.    This action arises under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

*Annora Pharma Private Limited*

11.    This Court has personal jurisdiction over Annora Pharma because, upon information and belief, Annora Pharma regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, including by selling pharmaceutical products in New Jersey.  Annora Pharma, therefore, can reasonably expect to be subject to jurisdiction in the New Jersey courts.  Among other things, upon information and belief, Annora Pharma conducts marketing and sales activities in New Jersey, including but not limited to, distribution, marketing, and sales of pharmaceutical products to New Jersey residents that are continuous and systematic.

12.    In addition, this Court has personal jurisdiction over Annora Pharma because, *inter alia*, upon information and belief: (1) Annora Pharma, Hetero USA, and Hetero Labs acted in concert to file Annora's ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Annora's ANDA Product in the United States, including in New Jersey; and (2) upon FDA approval of Annora's ANDA, Annora Pharma, Hetero USA, and Hetero Labs will act in concert to commercially manufacture, use, offer for sale, sell, and/or import Annora's ANDA Product in the United States, including in New Jersey, and

will derive substantial revenue from the use or consumption of Annora's ANDA Product in New Jersey. Upon information and belief, upon FDA approval of Annora's ANDA, Annora's ANDA Product will be, *inter alia*, offered for sale in, sold in, and/or imported into New Jersey, prescribed by physicians practicing in New Jersey, dispensed by pharmacies located within New Jersey, and/or used by patients in New Jersey, all of which would have substantial effects on New Jersey.

13.    Upon information and belief, Annora Pharma acts in concert with Hetero USA, which maintains a principal place of business in New Jersey. Upon information and belief, Hetero USA is the United States regulatory agent for Annora Pharma, including with respect to Annora's ANDA.

14.    Annora Pharma has been sued previously in this Judicial District and has not challenged personal jurisdiction and has availed itself of the legal protections of the State of New Jersey by asserting counterclaims against plaintiffs in this Judicial District. *See, e.g.*, *Azurity Pharmaceuticals, Inc. v. Annora Pharma Private Limited*, Civ. No. 2:24-08809, ECF No. 12 (D.N.J. Feb. 03, 2025); *Azurity Pharmaceuticals, Inc. v. Annora Pharma Private Limited*, Civ. No. 2:23-18420, ECF No. 18 (D.N.J. Nov. 06, 2023); *Rigel Pharmaceuticals, Inc. v. Annora Pharma Private Limited et al.*, Civ. No. 3:22-04732, ECF No. 7 (D.N.J. Sept. 21, 2022).

15.    Alternatively, this Court may exercise personal jurisdiction over Annora Pharma pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) ChemoCentryx's claims arise under federal law; (b) Annora Pharma is a foreign defendant not subject to general jurisdiction in the courts of any state; and (c) Annora Pharma has sufficient contacts with the United States, including but not limited to submitting numerous regulatory applications for drug products to FDA, including Annora's ANDA, in concert with its United States agent, Hetero USA, such that this Court's exercise of jurisdiction over Annora Pharma satisfies due process.

16.     Litigating in the District of New Jersey would not burden Annora Pharma unduly. Among other things, as explained above, Annora Pharma has not challenged personal jurisdiction in the District of New Jersey.  Upon information and belief, Annora Pharma maintains Hetero USA, a company residing in this district, as its United States agent for Annora's ANDA, and Hetero USA will, *inter alia*, market and distribute Annora's ANDA Product in concert with Annora Pharma and Hetero Labs.  The United States has a substantial interest in adjudicating the dispute and enforcing its patent laws.  ChemoCentryx has a substantial interest in obtaining convenient and effective relief for violations of its property interests.  Moreover, the states have a shared interest in furthering the fundamental substantive policy of the United States with respect to its intellectual property laws.

17.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because, *inter alia*, Annora Pharma is a foreign entity that may be sued in any judicial district in the United States.

### Hetero USA Inc.

18.     This Court has personal jurisdiction over Hetero USA because, upon information and belief, *inter alia*, Hetero USA has its principal place of business in New Jersey.

19.     This Court also has personal jurisdiction over Hetero USA because, upon information and belief, Hetero USA regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, including by selling pharmaceutical products in New Jersey.  Hetero USA, therefore, can reasonably expect to be subject to jurisdiction in the New Jersey courts.  Among other things, upon information and belief, Hetero USA conducts marketing

and sales activities in New Jersey, including but not limited to, distribution, marketing, and sales of pharmaceutical products to New Jersey residents that are continuous and systematic.

20.     In addition, this Court has personal jurisdiction over Hetero USA because, *inter alia*, upon information and belief: (1) Annora Pharma, Hetero USA, and Hetero Labs acted in concert to file Annora's ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Annora's ANDA Product in the United States, including in New Jersey; and (2) upon FDA approval of Annora's ANDA, Annora Pharma, Hetero USA, and Hetero Labs will act in concert to commercially manufacture, use, offer for sale, sell, and/or import Annora's ANDA Product in the United States, including in New Jersey, and will derive substantial revenue from the use or consumption of Annora's ANDA Product in New Jersey.  Upon information and belief, upon FDA approval of Annora's ANDA, Annora's ANDA Product will be, *inter alia*, offered for sale in, sold in, and/or imported into New Jersey, prescribed by physicians practicing in New Jersey, dispensed by pharmacies located within New Jersey, and/or used by patients in New Jersey, all of which would have substantial effects on New Jersey.

21.     Hetero USA has been sued previously in this Judicial District and has not challenged personal jurisdiction and has availed itself of the legal protections of this Judicial District by asserting counterclaims against plaintiffs in this Judicial District.  *See, e.g.*, *Esperion Therapeutics, Inc. v. Hetero USA Inc. et al.*, Civ. No. 2:24-06389, ECF No. 31 (D.N.J. Mar. 7, 2025); *AbbVie Inc. et al. v. Hetero USA Inc. et al.*, Civ. No. 3:24-04852, ECF No. 25 (D.N.J. Jul. 16, 2024); *Rigel Pharmaceuticals, Inc. v. Annora Pharma Private Limited et al.*, Civ. No. 3:22-04732, ECF No. 7 (D.N.J. Sept. 21, 2022).

22.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because, *inter alia*, Hetero USA has committed and will commit acts of infringement in

this Judicial District and has a regular and established place of business at its headquarters in New Jersey, located within this Judicial District.

### *Hetero Labs Limited*

23.    This Court has personal jurisdiction over Hetero Labs because, upon information and belief, Hetero Labs regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, including by selling its pharmaceutical products in New Jersey.  Hetero Labs, therefore, can reasonably expect to be subject to jurisdiction in the New Jersey courts.  Among other things, upon information and belief, Hetero Labs conducts marketing and sales activities in the State of New Jersey, including but not limited to, distribution, marketing, and sales of pharmaceutical products to New Jersey residents that are continuous and systematic.

24.    In addition, this Court has personal jurisdiction over Hetero Labs because, *inter alia*, upon information and belief: (1) Annora Pharma, Hetero USA, and Hetero Labs acted in concert to file Annora's ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Annora's ANDA Product in the United States, including in New Jersey; and (2) upon FDA approval of Annora's ANDA, Annora Pharma, Hetero USA, and Hetero Labs will act in concert to commercially manufacture, use, offer for sale, sell, and/or import Annora's ANDA Product in the United States, including in New Jersey, and will derive substantial revenue from the use or consumption of Annora's ANDA Product in New Jersey.  Upon information and belief, upon FDA approval of Annora's ANDA, Annora's ANDA Product will be, *inter alia*, offered for sale in, sold in, and/or imported into New Jersey, prescribed by physicians practicing in New Jersey, dispensed by pharmacies located within New Jersey, and/or used by patients in New Jersey, all of which would have substantial effects on New Jersey.

25.　　Upon information and belief, Hetero Labs acts in concert with Hetero USA, which maintains a principal place of business in New Jersey.  Upon information and belief, Hetero USA is a subsidiary of Hetero Labs.

26.　　Hetero Labs has been sued previously in this Judicial District and has not challenged personal jurisdiction and has availed itself of the legal protections of the State of New Jersey by asserting counterclaims against plaintiffs in this Judicial District.  *See, e.g.*, *Esperion Therapeutics, Inc. v. Hetero USA Inc. et al.*, Civ. No. 2:24-06389, ECF No. 31 (D.N.J. Mar. 7, 2025); *AbbVie Inc. et al. v. Hetero USA Inc. et al.*, Civ. No. 3:24-04852, ECF No. 25 (D.N.J. Jul. 16, 2024); *Rigel Pharmaceuticals, Inc. v. Annora Pharma Private Limited et al.*, Civ. No. 3:22-04732, ECF No. 7 (D.N.J. Sept. 21, 2022).

27.　　Alternatively, this Court may exercise personal jurisdiction over Hetero Labs pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) ChemoCentryx's claims arise under federal law; (b) Hetero Labs is a foreign defendant not subject to general jurisdiction in the courts of any state; and (c) Hetero Labs has sufficient contacts with the United States, including but not limited to submitting numerous regulatory applications for drug products to FDA, including Annora's ANDA, in concert with Annora Pharma and its subsidiary, Hetero USA, such that this Court's exercise of jurisdiction over Hetero Labs satisfies due process.

28.　　Litigating in the District of New Jersey would not burden Hetero Labs unduly. Among other things, as explained above, Hetero Labs has not challenged personal jurisdiction in the District of New Jersey.  Upon information and belief, Hetero Labs is the corporate parent of Hetero USA, a company residing in this district, and Hetero USA will, *inter alia*, market and distribute Annora's ANDA Product in concert with Hetero Labs and Annora Pharma.  The United States has a substantial interest in adjudicating the dispute and enforcing its patent laws.

ChemoCentryx has a substantial interest in obtaining convenient and effective relief for violations of its property interests.  Moreover, the states have a shared interest in furthering the fundamental substantive policy of the United States with respect to its intellectual property laws.

29.    Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because, *inter alia*, Hetero Labs is a foreign entity that may be sued in any judicial district in the United States.

## THE PATENTS-IN-SUIT

### U.S. Patent No. 11,951,214

30.    On April 9, 2024, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '214 Patent entitled "Capsule formulations."

31.    ChemoCentryx is the assignee and owns all legal right, title, and interest in and to the '214 Patent.

32.    A true and correct copy of the '214 Patent is attached hereto as Exhibit A.

### U.S. Patent No. 11,603,356

33.    On March 14, 2023, the USPTO duly and legally issued the '356 Patent entitled "Amorphous form of a complement component C5a receptor."

34.    ChemoCentryx is the assignee and owns all legal right, title, and interest in and to the '356 Patent.

35.    A true and correct copy of the '356 Patent is attached hereto as Exhibit B.

## TAVNEOS®

36.    ChemoCentryx is the holder of FDA-approved NDA No. 214487 (the "TAVNEOS® NDA") for avacopan capsules, 10 mg, which are sold in the United States under the trademark TAVNEOS®.

37.     TAVNEOS® is an orally administered complement 5a receptor antagonist.   On October 7, 2021, FDA granted approval to market TAVNEOS® for use as an adjunctive treatment of adult patients with severe active anti-neutrophil cytoplasmic autoantibody (ANCA)-associated vasculitis (granulomatosis with polyangiitis [GPA] and microscopic polyangiitis [MPA]) in combination with standard therapy including glucocorticoids.

38.     Pursuant to 21 U.S.C. § 355, and attendant FDA regulations, the Patents-in-Suit are listed in the FDA publication entitled Approved Drug Products and Therapeutic Equivalence Evaluations (the "Orange Book") for the TAVNEOS® NDA.

## ANNORA'S ANDA

39.     Upon information and belief, Annora submitted to FDA Annora's ANDA under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355(j), seeking FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of Annora's ANDA Product before the expiration of the Patents-in-Suit, including any applicable exclusivities or extensions.

40.     Upon information and belief, Annora included within its ANDA a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(III) that Annora is not seeking FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of Annora's ANDA Product before the expiration of U.S. Patent Nos. 8,445,515 ("'515 Patent") and 8,906,938 ("'938 Patent").  The '515 and '938 Patents are also listed in the Orange Book for the TAVNEOS® NDA, and expire on February 3, 2031, and January 6, 2034, respectively.

41.     In Annora's Notice Letter, Annora notified ChemoCentryx that Annora had submitted to FDA Annora's ANDA for Annora's ANDA Product.

42.    ChemoCentryx received Annora's Notice Letter on December 29, 2025.

43.    In Annora's Notice Letter, Annora notified ChemoCentryx that, as a part of its ANDA, Annora had filed a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (a "Paragraph IV Certification"), with respect to the '214 and '356 Patents alleging that the patents are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of the drug product described in Annora's ANDA.

44.    Upon information and belief, Annora included the Paragraph IV Certification in its ANDA for the purpose of obtaining approval from FDA to engage in the commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of Annora's ANDA Product before the expiration of the Patents-in-Suit, including any applicable exclusivities or extensions.  And upon information and belief, upon FDA approval of Annora's ANDA, Annora will act in concert to commercially manufacture, use, offer for sale, sell, and/or import Annora's ANDA Product in the United States.

45.    Annora relies on TAVNEOS® as the reference product for approval of Annora's ANDA Product.

46.    Upon information and belief, by filing Annora's ANDA, Annora has represented to FDA, *inter alia*, that Annora's ANDA Product has the same active ingredient, method of administration, dosage form, and dosage amount as TAVNEOS®, and will be bioequivalent to TAVNEOS®.

47.    Upon information and belief, Annora's proposed labeling for Annora's ANDA Product copies, *inter alia*, the active ingredient, method of administration, dosage form, and dosage amount in the FDA-approved label for TAVNEOS®.

48.     Upon information and belief, Annora's ANDA seeks FDA approval of Annora's ANDA Product for the indication included in the FDA-approved label for TAVNEOS®, *i.e.*, for use as an adjunctive treatment of adult patients with severe active anti-neutrophil cytoplasmic autoantibody (ANCA)-associated vasculitis (granulomatosis with polyangiitis [GPA] and microscopic polyangiitis [MPA]) in combination with standard therapy including glucocorticoids.

49.     Upon information and belief, Annora intends, conditioned upon FDA approval of Annora's ANDA, to market Annora's ANDA Product for the indication included in the FDA-approved label for TAVNEOS®.

50.     Upon information and belief, Annora also intends, conditioned upon FDA approval of Annora's ANDA, for healthcare providers to prescribe and use, and for patients to use, Annora's ANDA Product in accordance with and as directed by Annora's proposed labeling for Annora's ANDA Product.

51.     Upon information and belief, Annora intends to engage in the commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of Annora's ANDA Product with its proposed labeling immediately and imminently upon FDA approval of Annora's ANDA.

52.     ChemoCentryx is timely commencing this action within 45 days of receiving Annora's Notice Letter pursuant to 21 U.S.C. § 255 (j)(5)(B)(iii).

**<u>COUNT I</u>**
**<u>(Infringement of U.S. Patent No. 11,951,214</u>**
**<u>Under 35 U.S.C. § 271(e)(2)(A))</u>**

53.     ChemoCentryx incorporates each of the preceding paragraphs 1–52 as if fully set forth herein.

54.    Claim 1 of the '214 Patent claims "[a] solid solution capsule formulation comprising [avacopan] as a free base, in its neutral form, or in the form of a pharmaceutically acceptable salt and a vehicle comprising at least one non-ionic surfactant selected from the group consisting of macrogol-40-glycerol hydroxystearate, macrogolglycerol ricinoleate, and macrogol-15-hydroxystearate, and at least one water-soluble solubilizer selected from the group consisting of PEG-1500, PEG-1540, PEG-2000, PEG-3000, PEG-3350, PEG-4000, PEG-6000, PEG-8000, wherein [avacopan] comprises about 1 to 3% by weight of the total fill weight of said solid solution capsule formulation, the vehicle comprises about 97 to 99% by weight of the total fill weight of said solid solution capsule formulation, and the total weight of the vehicle comprises a 45:55 to 55:45 ratio of the at least one non-ionic surfactant to the at least one water-soluble solubilizer."

55.    Upon information and belief, Annora's ANDA Product is covered by one or more claims of the '214 Patent, including at least claim 1, because it is a solid solution capsule formulation comprising avacopan as a free base, in its neutral form, or in the form of a pharmaceutically acceptable salt and a vehicle comprising at least one non-ionic surfactant selected from the group consisting of macrogol-40-glycerol hydroxystearate, macrogolglycerol ricinoleate, and macrogol-15-hydroxystearate, and at least one water-soluble solubilizer selected from the group consisting of PEG-1500, PEG-1540, PEG-2000, PEG-3000, PEG-3350, PEG-4000, PEG-6000, PEG-8000, wherein avacopan comprises about 1 to 3% by weight of the total fill weight of said solid solution capsule formulation, the vehicle comprises about 97 to 99% by weight of the total fill weight of said solid solution capsule formulation, and the total weight of the vehicle comprises a 45:55 to 55:45 ratio of the at least one non-ionic surfactant to the at least one water-soluble solubilizer, or an equivalent thereof.

14

56.     Upon information and belief, Annora's commercial manufacture, use, sale, and/or offer for sale of Annora's ANDA Product within the United States, and/or Annora's importation of Annora's ANDA Product into the United States, would directly infringe, or would actively induce or contribute to infringement of one or more claims of the '214 Patent, including at least claim 1, either literally or under the doctrine of equivalents. *See* 35 U.S.C. §§ 271(a), (b), and (c). Accordingly, unless enjoined by this Court, upon FDA approval of Annora's ANDA, Annora will commercially manufacture, use, offer for sale, and/or sell Annora's ANDA Product within the United States, and/or import Annora's ANDA Product into the United States, and will thereby infringe, contribute to the infringement of, or induce the infringement of one or more claims of the '214 Patent. *See id.*

57.     Annora has, and will have upon FDA approval, actual knowledge of the '214 Patent, as evidenced at least by Annora's Notice Letter and Annora's ANDA including a Paragraph IV Certification with respect to the '214 Patent.

58.     Upon information and belief, the commercial manufacture, use, offer for sale, and/or sale of Annora's ANDA Product within the United States, the importation of Annora's ANDA Product into the United States, and/or the use of Annora's ANDA Product within the United States in accordance with and as directed by the instructions included in the proposed labeling of Annora's ANDA Product will constitute direct infringement of one or more claims of the '214 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

59.     Upon information and belief, upon FDA approval of Annora's ANDA, Annora will include within the packaging of Annora's ANDA Product, or will otherwise make available to third parties, including, for example, patients and healthcare providers, labeling that instructs and

encourages those third parties to infringe one or more claims of the '214 Patent, including at least claim 1, within the United States.

60.    Upon information and belief, Annora will commercially manufacture, use, offer for sale, and/or sell Annora's ANDA Product within the United States, and/or import Annora's ANDA Product into the United States, with the specific intent to induce infringement of one or more claims of the '214 Patent, including at least claim 1, through, *inter alia*, the labeling of Annora's ANDA Product.

61.    Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling Annora's ANDA Product within the United States, and/or importing Annora's ANDA Product into the United States, to be used in accordance with and as directed by Annora's proposed labeling, Annora will knowingly induce third parties, including, for example, patients and healthcare providers, to infringe one or more claims of the '214 Patent, including at least claim 1, and will specifically intend that those third parties do the same.

62.    Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product with its proposed labeling, Annora will contribute to infringement of one or more claims of the '214 Patent by third parties because: (i) Annora's ANDA Product constitutes a material part of at least claim 1 of the '214 Patent; (ii) Annora knows or should know that Annora's ANDA Product will be especially made and adapted for uses that directly infringe at least claim 1 of the '214 Patent; and (iii) Annora's ANDA Product is not a staple article or commodity of commerce suitable for substantial noninfringing uses.

63.    The purpose of filing Annora's ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of Annora's ANDA Product

within the United States, and/or the importation of Annora's ANDA Product into the United States, prior to the expiration of the '214 Patent, including any applicable exclusivities or extensions.

64.    Annora has thus committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

65.    Annora's infringement of the '214 Patent will cause ChemoCentryx to suffer irreparable harm.    Annora's infringement will continue unless enjoined by the Court. ChemoCentryx has no adequate remedy at law and thus injunctive relief is appropriate to prohibit Annora from infringing the '214 Patent.

## COUNT II
### (Declaration of Infringement of U.S. Patent No. 11,951,214 Under 35 U.S.C. §§ 271(a), (b), and/or (c))

66.    ChemoCentryx incorporates each of the preceding paragraphs 1–65 as if fully set forth herein.

67.    Upon information and belief, Annora's ANDA Product is covered by one or more claims of the '214 Patent, including at least claim 1, because it is a solid solution capsule formulation comprising avacopan as a free base, in its neutral form, or in the form of a pharmaceutically acceptable salt and a vehicle comprising at least one non-ionic surfactant selected from the group consisting of macrogol-40-glycerol hydroxystearate, macrogolglycerol ricinoleate, and macrogol-15-hydroxystearate, and at least one water-soluble solubilizer selected from the group consisting of PEG-1500, PEG-1540, PEG-2000, PEG-3000, PEG-3350, PEG-4000, PEG-6000, PEG-8000, wherein avacopan comprises about 1 to 3% by weight of the total fill weight of said solid solution capsule formulation, the vehicle comprises about 97 to 99% by weight of the total fill weight of said solid solution capsule formulation, and the total weight of the vehicle comprises a 45:55 to 55:45 ratio of the at least one non-ionic surfactant to the at least one water-soluble solubilizer, or an equivalent thereof.

68.     Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product, Annora will infringe, induce infringement, and/or contribute to infringement of one or more claims of the '214 Patent, including at least claim 1, under 35 U.S.C. §§ 271(a), (b), and/or (c), either literally or under the doctrine of equivalents.

69.     Annora has, and will have upon FDA approval, actual knowledge of the '214 Patent, as evidenced at least by Annora's Notice Letter and Annora's ANDA including a Paragraph IV Certification with respect to the '214 Patent.

70.     Upon information and belief, the commercial manufacture, use, offer for sale, and/or sale of Annora's ANDA Product within the United States, the importation of Annora's ANDA Product into the United States, and/or the use of Annora's ANDA Product within the United States in accordance with and as directed by the instructions included in the proposed labeling of Annora's ANDA Product will constitute direct infringement of one or more claims of the '214 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

71.     Upon information and belief, upon FDA approval of Annora's ANDA, Annora will include within the packaging of Annora's ANDA Product, or will otherwise make available to third parties, including, for example, patients and healthcare providers, labeling that instructs and encourages those third parties to infringe one or more claims of the '214 Patent, including at least claim 1, within the United States.

72.     Upon information and belief, Annora will commercially manufacture, use, offer for sale, and/or sell Annora's ANDA Product within the United States, and/or import Annora's ANDA Product into the United States, with the specific intent to induce infringement of one or more

claims of the '214 Patent, including at least claim 1, through, *inter alia*, the labeling of Annora's ANDA Product.

73.     Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling Annora's ANDA Product within the United States, and/or importing Annora's ANDA Product into the United States, to be used in accordance with and as directed by Annora's proposed labeling, Annora will knowingly induce third parties, including, for example, patients and healthcare providers, to infringe one or more claims of the '214 Patent, including at least claim 1, and will specifically intend that those third parties do the same.

74.     Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product with its proposed labeling, Annora will contribute to infringement of one or more claims of the '214 Patent by third parties because: (i) Annora's ANDA Product constitutes a material part of at least claim 1 of the '214 Patent; (ii) Annora knows or should know that Annora's ANDA Product will be especially made and adapted for uses that directly infringe at least claim 1 of the '214 Patent; and (iii) Annora's ANDA Product is not a staple article or commodity of commerce suitable for substantial noninfringing uses.

75.     Upon information and belief, Annora intends to commercially manufacture, use, offer for sale, and/or sell within the United States, and/or import into the United States, Annora's ANDA Product with its proposed labeling immediately and imminently upon final approval of Annora's ANDA, i.e., prior to the expiration of the '214 Patent, including any applicable exclusivities or extensions.

76.     Upon information and belief, Annora has made, and will continue to make, substantial preparation in the United States to commercially manufacture, use, offer for sale, and/or

sell within the United States, and/or import into the United States, Annora's ANDA Product with its proposed labeling prior to the expiration of the '214 Patent, including any applicable exclusivities or extensions.

77.     Therefore, a case or controversy exists between ChemoCentryx and Annora as to infringement of the '214 Patent such that the Court may enter ChemoCentryx's request for declaratory relief consistent with Article III of the United States Constitution.

78.     ChemoCentryx is entitled to a declaratory judgment that by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product prior to the expiration of the '214 Patent, including any applicable exclusivities or extensions, Annora would infringe, induce infringement, and/or contribute to infringement of the '214 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c), either literally or under the doctrine of equivalents.

79.     Annora's infringement of the '214 Patent will cause ChemoCentryx to suffer irreparable harm.   Annora's infringement will continue unless enjoined by the Court. ChemoCentryx has no adequate remedy at law and thus injunctive relief is appropriate to prohibit Annora from infringing the '214 Patent.

**COUNT III**
**(Infringement of U.S. Patent No. 11,603,356**
**Under 35 U.S.C. § 271(e)(2)(A))**

80.     ChemoCentryx incorporates each of the preceding paragraphs 1–79 as if fully set forth herein.

81.     Claim 1 of the '356 Patent claims "[a]n amorphous form of [avacopan] characterized by an X-ray powder diffraction pattern having no distinct peaks, which is substantially free of other forms of [avacopan]."

82.    Upon information and belief, Annora's ANDA Product is covered by one or more claims of the '356 Patent, including at least claim 1, because it contains an amorphous form of avacopan characterized by an X-ray powder diffraction pattern having no distinct peaks, which is substantially free of other forms of avacopan, or an equivalent thereof.

83.    Upon information and belief, upon FDA approval, Annora's ANDA Product will be used according to and as directed by Annora's proposed label as an adjunctive treatment of adult patients with severe active anti-neutrophil cytoplasmic autoantibody (ANCA)-associated vasculitis (granulomatosis with polyangiitis [GPA] and microscopic polyangiitis [MPA]) in combination with standard therapy including glucocorticoids.

84.    Upon information and belief, Annora's commercial manufacture, use, sale, and/or offer for sale of Annora's ANDA Product within the United States, and/or Annora's importation of Annora's ANDA Product into the United States, would directly infringe, or would actively induce or contribute to infringement of one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, either literally or under the doctrine of equivalents. *See* 35 U.S.C. §§ 271(a), (b), and (c). Accordingly, unless enjoined by this Court, upon FDA approval of Annora's ANDA, Annora will commercially manufacture, use, offer for sale, and/or sell Annora's ANDA Product in the United States, and/or import Annora's ANDA Product into the United States, and will thereby infringe, contribute to the infringement of, or induce the infringement of one or more claims of the '356 Patent. *See id.*

85.    Annora has, and will have upon FDA approval, actual knowledge of the '356 Patent, as evidenced at least by Annora's Notice Letter and Annora's ANDA including a Paragraph IV Certification.

86.    Upon information and belief, the commercial manufacture, use, sale, and/or offer for sale of Annora's ANDA Product within the United States, the importation of Annora's ANDA Product into the United States, and/or the use of Annora's ANDA Product within the United States in accordance with and as directed by Annora's proposed labeling for that product will constitute direct infringement of one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, either literally or under the doctrine of equivalents.

87.    Upon information and belief, upon FDA approval of Annora's ANDA, Annora will include within the packaging of Annora's ANDA Product, or will otherwise make available to third parties, including, for example, patients and healthcare providers, labeling that instructs and encourages those third parties to infringe one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, within the United States.

88.    Upon information and belief, Annora will commercially manufacture, use, offer for sale, and/or sell Annora's ANDA Product within the United States, and/or import Annora's ANDA Product into the United States, with the specific intent to induce infringement of one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, through, *inter alia*, the labeling of Annora's ANDA Product.

89.    Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling Annora's ANDA Product within the United States, and/or importing Annora's ANDA Product into the United States, to be used in accordance with and as directed by Annora's proposed labeling, Annora will knowingly induce third parties, including, for example, patients and healthcare providers, to infringe one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, and will specifically intend that they do the same.

90.     Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product with its proposed labeling, Annora will contribute to infringement of one or more claims of the '356 Patent by third parties because: (i) Annora's ANDA Product constitutes a material part of at least claim 1 and/or claim 21 of the '356 Patent; (ii) Annora knows or should know that Annora's ANDA Product will be especially made and adapted for uses that directly infringe at least claim 1 and/or claim 21 of the '356 Patent; and (iii) Annora's ANDA Product is not a staple article or commodity of commerce suitable for substantial noninfringing uses.

91.     The purpose of filing Annora's ANDA was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of Annora's ANDA Product within the United States, and/or importation of Annora's ANDA Product into the United States, prior to the expiration of the '356 Patent, including any applicable exclusivities or extensions.

92.     Annora has thus committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

93.     Annora's infringement of the '356 Patent will cause ChemoCentryx to suffer irreparable harm.  Annora's infringement will continue unless enjoined by the Court. ChemoCentryx has no adequate remedy at law and thus injunctive relief is appropriate to prohibit Annora from infringing the '356 Patent.

## COUNT IV
### (Declaration of Infringement of U.S. Patent No. 11,603,356 Under 35 U.S.C. §§ 271(a), (b), and/or (c))

94.     ChemoCentryx incorporates each of the preceding paragraphs 1–93 as if fully set forth herein.

95.     Upon information and belief, Annora's ANDA Product is covered by one or more claims of the '356 Patent, including at least claim 1, because it contains an amorphous form of

23

avacopan characterized by an X-ray powder diffraction pattern having no distinct peaks, which is substantially free of other forms of avacopan, or an equivalent thereof.

96.    Upon information and belief, upon FDA approval, Annora's ANDA Product will be used according to and as directed by Annora's proposed label as an adjunctive treatment of adult patients with severe active anti-neutrophil cytoplasmic autoantibody (ANCA)-associated vasculitis (granulomatosis with polyangiitis [GPA] and microscopic polyangiitis [MPA]) in combination with standard therapy including glucocorticoids.

97.    Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product, Annora will infringe, induce infringement, and/or contribute to infringement of one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, under 35 U.S.C. §§ 271(a), (b), and/or (c), either literally or under the doctrine of equivalents.

98.    Annora has, and will have upon FDA approval, actual knowledge of the '356 Patent, as evidenced at least by Annora's Notice Letter and Annora's ANDA including a Paragraph IV Certification.

99.    Upon information and belief, the commercial manufacture, use, sale, and/or offer for sale of Annora's ANDA Product within the United States, the importation of Annora's ANDA Product into the United States, and/or the use of Annora's ANDA Product within the United States in accordance with and as directed by Annora's proposed labeling for that product will constitute direct infringement of one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, either literally or under the doctrine of equivalents.

100.    Upon information and belief, upon FDA approval of Annora's ANDA, Annora will include within the packaging of Annora's ANDA Product, or will otherwise make available to

third parties, including, for example, patients and healthcare providers, labeling that instructs and encourages those third parties to infringe one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, within the United States.

101.    Upon information and belief, Annora will commercially manufacture, use, offer for sale, and/or sell Annora's ANDA Product within the United States, and/or import Annora's ANDA Product into the United States, with the specific intent to induce infringement of one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, through, *inter alia*, the labeling of Annora's ANDA Product.

102.    Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling Annora's ANDA Product within the United States, and/or importing Annora's ANDA Product into the United States, to be used in accordance with and as directed by Annora's proposed labeling, Annora will knowingly induce third parties, including, for example, patients and healthcare providers, to infringe one or more claims of the '356 Patent, including at least claim 1 and/or claim 21, and will specifically intend that they do the same.

103.    Upon information and belief, by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product with its proposed labeling, Annora will contribute to infringement of one or more claims of the '356 Patent by third parties because: (i) Annora's ANDA Product constitutes a material part of at least claim 1 and/or claim 21 of the '356 Patent; (ii) Annora knows or should know that Annora's ANDA Product will be especially made and adapted for uses that directly infringe at least claim 1 and/or claim 21 of the '356 Patent; and (iii) Annora's ANDA Product is not a staple article or commodity of commerce suitable for substantial noninfringing uses.

104. Upon information and belief, Annora intends to commercially manufacture, use, offer for sale, and/or sell within the United States, and/or import into the United States, Annora's ANDA Product with its proposed labeling immediately and imminently upon final approval of Annora's ANDA, i.e., prior to the expiration of the '356 Patent, including any applicable exclusivities or extensions.

105. Upon information and belief, Annora has made, and will continue to make, substantial preparation in the United States to commercially manufacture, use, offer for sale, and/or sell within the United States, and/or import into the United States, Annora's ANDA Product with its proposed labeling prior to the expiration of the '356 Patent, including any applicable exclusivities or extensions.

106. Therefore, a case or controversy exists between ChemoCentryx and Annora as to infringement of the '356 Patent such that the Court may enter ChemoCentryx's request for declaratory relief consistent with Article III of the United States Constitution.

107. ChemoCentryx is entitled to a declaratory judgment that by commercially manufacturing, using, offering for sale, and/or selling within the United States, and/or importing into the United States, Annora's ANDA Product prior to the expiration of the '356 Patent, including any applicable exclusivities or extensions, Annora would infringe, induce infringement, and/or contribute to infringement of the '356 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c), either literally or under the doctrine of equivalents.

108. Annora's infringement of the '356 Patent will cause ChemoCentryx to suffer irreparable harm. Annora's infringement will continue unless enjoined by the Court. ChemoCentryx has no adequate remedy at law and thus injunctive relief is appropriate to prohibit Annora from infringing the '356 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, ChemoCentryx respectfully requests the following relief:

A.      A judgment that Annora has infringed one or more claims of each of the Patents-in-Suit by submitting ANDA No. 220814 seeking FDA approval for the commercial manufacture, use, offer for sale, and/or sale of Annora's ANDA Product within the United States, and/or importation of Annora's ANDA Product into the United States, prior to the expiration of the Patents-in-Suit, including any applicable exclusivities or extensions, under 35 U.S.C. § 271(e)(2)(A);

B.      An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 220814 under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of the Patents-in-Suit, including any applicable exclusivities or extensions;

C.      A judgment pursuant to 35 U.S.C. § 271(e)(4)(B) and/or 35 U.S.C. § 283 permanently enjoining Annora, its officers, directors, employees, representatives, agents, parents, subsidiaries, affiliates, customers, distributors, suppliers, and those persons in active concert or participation with any of them, and its successors and assigns, from engaging in the commercial manufacture, use, offer for sale, and/or sale within the United States, and/or importation into the United States, of Annora's ANDA Product prior to the expiration of the Patents-in-Suit, including any applicable exclusivities or extensions;

D.      A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that if Annora, its officers, directors, employees, representatives, agents, parents, subsidiaries, affiliates, customers, distributors, suppliers, and those persons in active concert or participation with any of them, and its successors and assigns, commercially manufacture, use, offer for sale, and/or sell within the

United States, and/or import into the United States, Annora's ANDA Product prior to the expiration of the Patents-in-Suit, including any applicable exclusivities or extensions, it will constitute an act of infringement under 35 U.S.C. §§ 271(a), (b), and/or (c);

E.      A judgment awarding ChemoCentryx monetary relief together with interest if Annora commercially manufactures, uses, offers for sale, and/or sells within the United States, and/or imports into the United States, Annora's ANDA Product prior to the expiration of the Patents-in-Suit, including any applicable exclusivities or extensions;

F.      A declaration that this case is "exceptional" case under 35 U.S.C. § 285 and an award for attorneys' fees;

G.      An award of costs and expenses in this action; and

H.      Such other and further relief as the Court may deem just and proper.

Dated:  February 9, 2026

OF COUNSEL:

Charlotte C. Jacobsen (*pro hac vice* forthcoming)
Yi Zhang (*pro hac vice* forthcoming)
Michelle J. Zhu (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Christine Ranney (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700

Anne Y. Brody (*pro hac vice* forthcoming)
Emily Whitcher (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412

Respectfully submitted,

/s/*Liza M. Walsh*
Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ  07102
(973) 757-1100
lwalsh@walsh.law
mhaefner@walsh.law
jformichella@walsh.law

*Attorneys for ChemoCentryx, Inc.*

(949) 451-3800

Wendy A. Whiteford (*pro hac vice*
forthcoming)
Steven D. Tang (*pro hac vice* forthcoming)
Blake B. Greene (*pro hac vice* forthcoming)
Melissa R. Gibson (*pro hac vice* forthcoming)
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1799
(805) 447-1000

*Attorneys for ChemoCentryx, Inc.*

## RULE 11.2 CERTIFICATION

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiff that should be joined to this action. In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: February 9, 2026

OF COUNSEL:

Charlotte C. Jacobsen (*pro hac vice* forthcoming)
Yi Zhang (*pro hac vice* forthcoming)
Michelle J. Zhu (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Christine Ranney (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700

Anne Y. Brody (*pro hac vice* forthcoming)
Emily Whitcher (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
(949) 451-3800

Wendy A. Whiteford (*pro hac vice* forthcoming)
Steven D. Tang (*pro hac vice* forthcoming)
Blake B. Greene (*pro hac vice* forthcoming)
Melissa R. Gibson (*pro hac vice* forthcoming)

/s/Liza M. Walsh
Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
mhaefner@walsh.law
jformichella@walsh.law

*Attorneys for ChemoCentryx, Inc.*

AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1799
(805) 447-1000

*Attorneys for ChemoCentryx, Inc.*

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiff seeks, *inter alia*, injunctive relief.

Dated:  February 9, 2026

OF COUNSEL:

Charlotte C. Jacobsen (*pro hac vice* forthcoming)
Yi Zhang (*pro hac vice* forthcoming)
Michelle J. Zhu (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Christine Ranney (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700

Anne Y. Brody (*pro hac vice* forthcoming)
Emily Whitcher (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
(949) 451-3800

Wendy A. Whiteford (*pro hac vice* forthcoming)
Steven D. Tang (*pro hac vice* forthcoming)
Blake B. Greene (*pro hac vice* forthcoming)
Melissa R. Gibson (*pro hac vice* forthcoming)
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1799
(805) 447-1000

*Attorneys for ChemoCentryx, Inc.*

*/s/ Liza M. Walsh*
Liza M. Walsh
Marc D. Haefner
Jessica K. Formichella
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ  07102
(973) 757-1100
lwalsh@walsh.law
mhaefner@walsh.law
jformichella@walsh.law

*Attorneys for ChemoCentryx, Inc.*